UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY**, a nonprofit corporation,<br>   1333 N. Oracle Rd.<br>   Tucson AZ, 85705<br><br>   **Plaintiff,**<br>   v.<br><br>**DIRK KEMPTHORNE**, Secretary,<br>United States Department of the Interior<br>   1849 C Street, NW<br>   Washington, DC 20240<br><br>**UNITED STATES FISH AND WILDLIFE SERVICE**,<br>   1849 C Street, NW<br>   Washington, DC 20240<br><br>   **Defendants.** | **Case No:** |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

### I. INTRODUCTION

1. This action challenges the failure of Defendants Dirk Kempthorne, Secretary of Interior, and the United States Fish and Wildlife Service (collectively "FWS") to comply with the nondiscretionary deadlines of the Endangered Species Act ("ESA"). Specifically, FWS has failed to designate critical habitat for the Southwest Alaska Distinct Population Segment of the Northern Sea Otter (*Enhydra lutris kenyoni*) ("Alaska Sea Otter"), a threatened population of sea otters protected by the ESA.

2. Based on alarming population declines, FWS listed the Alaska Sea Otter under the ESA as a threatened species on August 9, 2005. 70 Fed. Reg. 46366 (Aug. 9, 2005).

This determination means that the Alaska Sea Otter is likely to become endangered in the foreseeable future throughout all or a significant portion of its range.  The population of Alaska Sea Otters has collapsed since the 1970s with only a fraction of individuals remaining.

3. The ESA mandates that when FWS lists a species it must designate critical habitat to protect the habitat and promote the recovery of the species.  Critical habitat is an effective and important component of the ESA.  For example, species with critical habitat are twice as likely to recover compared to species lacking designated habitat.

4. Generally, FWS must designate critical habitat <u>concurrently</u> with a listing under the ESA.  If, however, FWS finds that critical habitat is "not determinable" at the time of listing, then FWS has <u>one additional year</u> to finalize a rule designating critical habitat.

5. The Alaska Sea Otter remains without protected critical habitat even though the deadline has come and gone.  More than a year has passed since FWS listed the Alaska Sea Otter as a threatened species, therefore FWS violated its duty to designate critical habitat within the time limit mandated by the ESA.

6. FWS has deprived this critically imperiled species of significant legal protection that is important for the conservation and recovery of the Alaska Sea Otter.

7. The Center for Biological Diversity ("the Center") seeks declaratory and injunctive relief requiring FWS to comply with its mandatory duty under the ESA to designate critical habitat for the Alaska Sea Otter.

## II. JURISDICTION AND VENUE

8. This court has jurisdiction over this action pursuant to 16 U.S.C. § 1540(c) (actions under the ESA); 16 U.S.C. § 1540(g) (ESA citizen suit provision); 28 U.S.C. § 1331 (federal question); 28 U.S.C. § 1346 (action against the United States); 28 U.S.C. § 1361 (action to compel an officer of the United States to perform his or her duty); and 28 U.S.C. § 2201-02 (power to issue declaratory judgments in cases of actual controversy).

9. The Center provided FWS with at least sixty days written notice of the ESA violation alleged herein as required by 16 U.S.C. § 1540(g)(2)(c).

10. The Center demanded that FWS satisfy its statutory obligation to designate critical habitat for the Alaska Sea Otter. Defendants have failed to remedy the alleged violation, and therefore an actual controversy exists within the meaning of 28 U.S.C. § 2201(a).

11. Venue is proper in this court because Defendants reside in this district. 28 U.S.C. § 1391(e).

### III. PARTIES

12. Plaintiff CENTER FOR BIOLOGICAL DIVERSITY ("the Center") is a nonprofit corporation dedicated to the preservation, protection, and restoration of biodiversity, native species, ecosystems, public lands and waters. The Center's Oceans Program aims to protect ocean ecosystems in United States and international waters. Through research, advocacy, industry oversight, and enforcement of environmental laws, the Center works to establish vital protections for marine species and habitat. The Center has over 25,000 members, including members who have visited southwest Alaska to seek out the Alaska Sea Otter and enjoy its coastal and ocean habitat. These members intend to visit southwest Alaska in the future to search for the Alaska Sea Otter and explore its habitat.

13. The Center's members and staff use the habitat of the Alaska Sea Otter for wildlife observation, research, nature photography, aesthetic enjoyment, recreation, and educational and other activities. They use areas where these sea otters are present and where critical habitat would likely be designated. The Center's members derive substantial scientific, educational, recreational, and aesthetic benefits from this species' continued existence in the wild. FWS' failure to designate critical habitat for the Alaska Sea Otter irreparably damages these interests. The absence of critical habitat permits the degradation, modification, and destruction of habitat essential to the Alaska Sea Otter's

survival and recovery. Activities in the habitat of the Alaska Sea Otter are occurring that threaten the species, and such activities are less likely to occur with designated critical habitat and a separate consultation requirement. Alaska Sea Otters are declining and they need the full protection available under the ESA. The Center's interests in protecting imperiled species are adversely affected by the FWS' refusal to designate critical habitat for the Alaska Sea Otter.

14. The Center has a long-standing interest in conserving marine mammals and their habitat, including diligent efforts to protect the Alaska Sea Otter. In 2000, the Center filed a petition to list this population of sea otters as endangered. After long delay, FWS determined that listing the Alaska Sea Otter was warranted but precluded by higher listing priorities. The Center filed suit challenging FWS' decision; subsequently FWS proposed a rule to list the Alaska Sea Otter. Although FWS recognized that the Alaska Sea Otters were in trouble, it refused to timely finalize the rule listing the species as threatened. The Center filed suit again to compel FWS to issue a final listing rule. Now, once again, FWS refuses to comply with the procedures and timelines of the ESA, leaving the Center with little choice but to file suit.

15. The Center brings this action on behalf of itself and its adversely affected members and staff. FWS' failure to designate critical habitat deprives the Center and its members of legally required protective measures to conserve and promote the recovery of the Alaska Sea Otter. The recreational, aesthetic, conservation, educational, and scientific interests of the Center, its members, and staff have been, are being, and unless the relief prayed for herein is granted, will continue to be adversely affected and irreparably injured by FWS' failure to designate critical habitat for Alaska Sea Otter as required by law. The interests of the Center's members and the organization are thus directly and adversely affected by FWS' unlawful actions.

16. The injury to the Center, its members, and staff would be redressed by declaratory and injunctive relief compelling FWS to designate critical habitat for the Alaska Sea

Otter because such designation would better protect the otter's habitat thus helping conserve the Alaska Sea Otter. Protection of critical habitat is an important step toward the recovery of listed species and the added protection of critical habitat will improve the Alaska Sea Otter's chances of recovery. The Center has no adequate remedy at law.

17. Defendant DIRK KEMPTHORNE is the Secretary of Interior, and is sued in his official capacity. The Secretary of Interior is the federal official responsible under the ESA for implementing the requirement of the statute, including its critical habitat provisions. Secretary Kempthorne has the authority and ability to remedy the harm inflicted by Defendants' actions.

18. Defendant UNITED STATES FISH AND WILDLIFE SERVICE ("FWS") is the federal agency within the Department of Interior authorized and required by law to protect and manage the fish, wildlife, and natural plant resources of the United States, including enforcing the ESA. FWS published the final rule listing the Alaska Sea Otter and determined that critical habitat was "not determinable" for the species. FWS has the authority and ability to remedy the harm inflicted by Defendants' actions.

## IV. STATUTORY BACKGROUND

### A. The Endangered Species Act

19. With the ESA, Congress intended endangered species to be afforded the highest of priorities. The ESA's purpose is "to provide a means whereby the ecosystems upon which endangered species and threatened species depend may be conserved, [and] to provide a program for the conservation of such endangered species and threatened species." 16 U.S.C. § 1531(b).

20. To further these goals, the ESA requires that FWS protect imperiled species by listing them as "endangered" or "threatened," and by creating "critical habitat" for each listed species. 16 U.S.C. § 1533.

21. Critical habitat includes specific areas occupied by the threatened or endangered species with physical or biological features "(I) essential to the conservation of the

species and (II) which may require special management considerations or protection" and specific areas unoccupied by the species that "are essential for the conservation of the species." 16 U.S.C. § 1532(5)(A).

22. In the ESA, conservation means "to use and the use of all methods and procedures which are necessary to bring any endangered species or threatened species to the point at which the measures provided pursuant to this chapter are no longer necessary." 16 U.S.C. § 1532(3). Thus critical habitat defines the areas that require management to ensure that listed species can recover.

23. Congress recognized that the protection of habitat is essential to the recovery of listed species stating that:

> classifying a species as endangered or threatened is only the first step in insuring its survival. Of equal or more importance is the determination of the habitat necessary for that species' continued existence… If the protection of endangered and threatened species depends in large measure on the preservation of the species' habitat, then the ultimate effectiveness of the Endangered Species Act will depend on the designation of critical habitat.

H. Rep. No. 94-887 at 3 (1976).

24. FWS must designate critical habitat, "to the maximum extent prudent and determinable," <u>concurrent</u> with listing a species. 16 U.S.C. § 1533(a)(3)(A); *see also* 16 U.S.C. § 1533(b)(6)(C).

25. In situations where critical habitat is "not determinable" at the time of listing, FWS must conduct additional necessary research, and must publish a final determination of critical habitat <u>no later than one year</u> from the date of the "not determinable" finding. 16 U.S.C. § 1533(b)(6)(C)(ii). FWS shall make critical habitat designations based on "the best scientific data available." 16 U.S.C. § 1533(b)(2).

26. The ESA requires that FWS designate critical habitat at the same time the agency lists a species because critical habitat provides important protections for imperiled species beyond those provided by listing alone. For example, the ESA requires each

federal agency to insure that its actions will not "result in the destruction or adverse modification" of critical habitat. 16 U.S.C. § 1536(a)(2).

## V. FACTUAL BACKGROUND

**A. The Southwest Alaska Distinct Population Segment of the Northern Sea Otter**

27. Sea otters in southwest Alaska are in a grave situation with alarming and ongoing population declines. Listed as threatened under the ESA, one population of northern sea otter (*Enhydra lutris kenyoni*) is at issue here: the Southwest Alaska Distinct Population Segment of the Northern Sea Otter ("Alaska Sea Otter"). Once the largest population in the world, the Alaska Sea Otter population has collapsed and only a fraction of the otters remain.

28. Historically, sea otters were abundant throughout coastal areas from the northern Japanese archipelago around the north Pacific Rim to central Baja California, Mexico. Although sea otters were hunted to the brink of extension by commercial hunters, vigorous protection measures helped some populations rebound. Unfortunately, once again, the survival of the Alaska Sea Otter is at risk.

29. The Alaska Sea Otter's range spans from Attu Island in the Aleutians through the western shores of Cook Inlet, including waters adjacent to the Aleutian Islands, Alaska Peninsula, Kodiak archipelago, and Barren Islands. Most of the Alaska Sea Otters live within State waters and those further offshore are within the United States Exclusive Economic Zone.

30. Sea otters live in shallow water areas near the shore where they forage for urchins, crabs, mollusks, and shrimp. Sea otters are the smallest of all marine mammals, and they are usually observed on the ocean surface, swimming belly up, with forepaws on their chests while paddling with their hind feet. Although clumsy on land, sometimes sea otters haul out on shore.

31. Sea otters are a "keystone" species, meaning that they strongly influence the composition and diversity of their environment. For example, areas with sea otters have

dense kelp forests because the otters consume sea urchins. Without sea otters, urchins graze on kelp and deplete the productive kelp forests that provide habitat, nesting areas, and forage grounds for many other organisms.

32. The Alaska Sea Otter is on a trajectory toward extinction as its population collapses. A recent study estimated that the sea otter population has declined by 95% in the Aleutian archipelago since the 1960s. Another estimate indicates that the entire Alaska Sea Otter population has declined by at least 55-67% since the mid-1980s and surveys reveal extremely low densities of Alaska Sea Otters throughout their range.

33. The Alaska Sea Otter population decline is severe and ongoing. In the eastern Aleutian Islands sea otters are declining at a rate of 15% per year; the rate is 12.5% for islands along the south side of the Alaska Peninsula, and 29% in the western and central Aleutian Islands. If the decline continues unabated, the Alaskan Sea Otters will likely disappear in all or much of the Aleutian archipelago within a decade. As each year passes more and more otters are lost.

34. There are many potential causes of the decline of Alaska Sea Otters, and it is likely that many factors have played a role. Habitat protection is important because habitat degradation, modification, and destruction contribute to the decline.

35. Oil exploration and development as well as shipping related oil spills adversely affect sea otter habitat. Sea otters are extremely vulnerable to oil spills because they rely on their fur as insulation, and oiled sea otters suffer from hypothermia and poisoning. For example, nearly 1000 sea otters died from the Exxon Valdez oil spill in 1989. More recently, the Selendang Ayu oil spill in December 2004 resulted in the deaths of unknown numbers of Alaska Sea Otters. Despite the threatened status of the Alaska Sea Otter, new oil leasing is being proposed in areas close enough to affect the species.

36. Human greenhouse gas emissions also alter the Alaska Sea Otter's habitat. Global warming is increasing water temperatures, melting ice, and changing ocean currents. These circumstances can affect the entire web of life that the otters depend upon

by stressing marine organisms, changing interactions among species, and reducing the availability of prey. Additionally, carbon dioxide emissions are acidifying the ocean.

37. PCBs in sea otter habitat are another threat affecting the Alaska Sea Otters. High levels of PCBs have been found in their tissues, and PCBs are toxic to many species.

38. Additionally, predation by killer whales may be contributing to the decline of the Alaska Sea Otter. Traditionally, killer whales were thought to prefer larger prey such as whales, sea lions, and seals. The decline of Steller sea lions, northern fur seals, and harbor seals (the result of overharvest, food depletion, and climate change) may be related to increasing killer whale predation on sea otters.

39. Other factors may also play a role in the decline of the Alaska Sea Otter such as disease, fishing bycatch, take for subsistence purposes, and coastal development.

40. Based on the alarming population decline in the Aleutian Islands, in 2000, the Center filed a petition to list the Alaska Sea Otter as "endangered." Subsequently FWS published a notice designating the Alaska Sea Otter as a candidate species. 65 Fed. Reg. 67343 (Nov. 9, 2000). Although the population of Alaska Sea Otters continued to plunge, it took almost five years after the Center filed its petition for FWS to grant the Alaska Sea Otter protection under the ESA. During this delay thousands of Alaska Sea Otters were lost.

41. Alaska Sea Otters remain without the full protections mandated by the ESA in the form of critical habitat. Better protection for habitat is needed to conserve and recover the Alaska Sea Otter. While this imperiled species awaits protection, FWS continues to drag its feet.

**B. FWS Violated Its Mandatory Duty to Designate Critical Habitat**

42. On August 9, 2005, FWS finalized its rule listing the Alaska Sea Otter as a threatened species, meaning that it is likely to become endangered in the foreseeable future throughout all or a significant portion of its range. 70 Fed. Reg. 46366, 46383-84 (Aug. 9, 2005).

43. The final rule stated that critical habitat for the species was not determinable at the time of listing, and it stated that FWS must, within one year, designate critical habitat. *Id.* at 46384.

44. More than a year has passed since FWS found that the critical habitat for the Alaska Sea Otter was not determinable, and FWS has still not issued a final critical habitat designation for the Alaska Sea Otter.

45. FWS' failure to designate critical habitat within the time limit mandated by the ESA violates the clear terms of the statute.

46. Alaska Sea Otters are adversely affected by FWS' failure to afford the species the protection mandated by the ESA. Designation and management of critical habitat are vital for the conservation and recovery of the Alaska Sea Otter. In its final rule listing the Alaska Sea Otter, FWS agreed that "habitat protection may be an important factor in the recovery of the population." 70 Fed. Reg. at 46377.

## VI. CLAIM FOR RELIEF

47. The Center re-alleges and incorporates, as it fully set forth herein, each and every allegation in the preceding paragraphs of this complaint.

48. FWS violated and continues to violate the ESA, 16 U.S.C. § 1533, by failing to designate critical habitat for the Alaska Sea Otter within the time limit mandated by the ESA. 16 U.S.C. §§ 1533(a)(3)(A), (b)(6)(C)(ii); & 1540(g)(1)(C).

49. FWS' failure to designate critical habitat is arbitrary and capricious, and not in accordance with procedures required by law, in violation of the Administrative Procedure Act. 5 U.S.C. §§ 701-706.

## VII. PRAYER FOR RELIEF

50. For these reasons, the Center respectfully requests that this Court enter judgment providing the following relief:

    1. A declaration that FWS failed to perform a nondiscretionary duty, and acted in a manner that is arbitrary, capricious, or otherwise not in accordance with law, when

FWS failed to designate critical habitat for the Alaska Sea Otter within the timeframe dictated by the ESA;

2. An order requiring FWS to designate critical habitat for the Alaska Sea Otter by a date certain in compliance with the ESA and consistent with this Court's findings, with proposed and final rules as appropriate under the ESA;

3. An order awarding Plaintiff its costs of litigation, including reasonable attorney fees as provided by the ESA, 16 U.S.C. § 1540(g)(4), and/or the Equal Access to Justice Act, 28 U.S.C. § 2412; and

4. Provide such other relief as the Court deems just and proper.

DATED: December _____, 2006.                    Respectfully submitted,

_____
William J. Snape, III (DC Bar # 455266)
CENTER FOR BIOLOGICAL DIVERSITY
5268 Watson Street, NW
Washington, DC 20016
Telephone: (202) 537-3458, (202) 536-9351
Email: bsnape@biologicaldiversity.org
       billsnape@earthlink.net

Miyoko Sakashita (CA Bar #239639)
CENTER FOR BIOLOGICAL DIVERSITY
San Francisco Bay Area Office
1095 Market Street, Suite 511
San Francisco, CA 94103
Tel: 415-436-9682
Fax: 415-436-9683
Email:miyoko@biologicaldiversity.org
*Pro hac vice* (application pending)

Attorneys for Plaintiff

## I (a) PLAINTIFFS

CENTER FOR BIOLOGICAL DIVERSITY, a nonprofit corporation,
1333 N. Oracle Rd.
Tucson AZ, 85705

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF ____88888____
(EXCEPT IN U.S. PLAINTIFF CASES)

## DEFENDANTS

DIRK KEMPTHORNE, Secretary, United States Department of the Interior
1849 C Street, NW, Washington, DC 20240
UNITED STATES FISH AND WILDLIFE SERVICE
1849 C Street, NW, Washington, DC 20240

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT _____
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

## (c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

William J. Snape, III
Center for Biological Diversity
5268 Watson Street, NW
Washington, DC 20016
202-537-3458

Miyoko Sakashita
Center for Biological Diversity
1095 Market Street, Suite 511
San Francisco, CA 94103
415-436-9682 x 308

CASE NUMBER  1:06CV02151

JUDGE: Rosemary M. Collyer

DECK TYPE: Administrative Agency Rev

DATE STAMP: 12/19/2006

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
○ 3 Federal Question (U.S. Government Not a Party)
⊗ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP FOR PLAINTIFF

|  | PTF | DFT |  | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ **A. Antitrust**
☐ 410 Antitrust

○ **B. Personal Injury/Malpractice**
☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

⊗ **C. Administrative Agency Review**
☐ 151 Medicare Act
Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)
Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☒ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ **D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ **E. General Civil (Other)** OR ○ **F. Pro Se General Civil**

**Real Property**
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

**Personal Property**
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

**Bankruptcy**
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

**Prisoner Petitions**
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

**Property Rights**
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

**Federal Tax Suits**
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

**Forfeiture/Penalty**
☐ 610 Agriculture
☐ 620 Other Food & Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

**Other Statutes**
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

|   | G. *Habeas Corpus/ 2255* | | H. *Employment Discrimination* | | I. *FOIA/PRIVACY ACT* | | J. *Student Loan* |
|---|---|---|---|---|---|---|---|
| ○ | | ○ | | ○ | | ○ | |
|   | ☐ 530 Habeas Corpus-General | | ☐ 442 Civil Rights-Employment (criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation) | | ☐ 895 Freedom of Information Act ☐ 890 Other Statutory Actions (if Privacy Act) | | ☐ 152 Recovery of Defaulted Student Loans (excluding veterans) |
|   | ☐ 510 Motion/Vacate Sentence | | | | | | |
|   | | | *(If pro se, select this deck)* | | *(If pro se, select this deck)* | | |

|   | K. *Labor/ERISA (non-employment)* | | L. *Other Civil Rights (non-employment)* | | M. *Contract* | | N. *Three-Judge Court* |
|---|---|---|---|---|---|---|---|
| ○ | | ○ | | ○ | | ○ | |
|   | ☐ 710 Fair Labor Standards Act | | ☐ 441 Voting (if not Voting Rights Act) | | ☐ 110 Insurance | | ☐ 441 Civil Rights-Voting (if Voting Rights Act) |
|   | ☐ 720 Labor/Mgmt. Relations | | ☐ 443 Housing/Accommodations | | ☐ 120 Marine | | |
|   | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | | ☐ 444 Welfare | | ☐ 130 Miller Act | | |
|   | ☐ 740 Labor Railway Act | | ☐ 440 Other Civil Rights | | ☐ 140 Negotiable Instrument | | |
|   | ☐ 790 Other Labor Litigation | | ☐ 445 American w/Disabilities-Employment | | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | | |
|   | ☐ 791 Empl. Ret. Inc. Security Act | | ☐ 446 Americans w/Disabilities-Other | | ☐ 153 Recovery of Overpayment of Veteran's Benefits | | |
|   | | | | | ☐ 160 Stockholder's Suits | | |
|   | | | | | ☐ 190 Other Contracts | | |
|   | | | | | ☐ 195 Contract Product Liability | | |
|   | | | | | ☐ 196 Franchise | | |

**V. ORIGIN**
- ⦿ 1 Original Proceeding
- ○ 2 Removed from State Court
- ○ 3 Remanded from Appellate Court
- ○ 4 Reinstated or Reopened
- ○ 5 Transferred from another district (specify)
- ○ 6 Multi district Litigation
- ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
Violation of the Endangered Species Act for Failure to Designate Critical Habitat for the Southwest Alaska Northern Sea Otter; 16 U.S.C. Sec. 1540.

**VII. REQUESTED IN COMPLAINT**   CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23 ☐   DEMAND $ _____   Check YES only if demanded in compl: JURY DEMAND: YES ☐  NO ☒

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☐   NO ☒   If yes, please complete related case form.

DATE 12-19-06   SIGNATURE OF ATTORNEY OF RECORD _____

---

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed <u>only</u> if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.   CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the <u>primary</u> cause of action found in your complaint. You may select only <u>one</u> category. You <u>must</u> also select <u>one</u> corresponding nature of suit found under the category of case.

VI.   CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.