# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** ) | |
| ) | |
| **Plaintiff,** ) | **Case No: 1:06CV02151 (RMC)** |
| **v.** ) | |
| ) | |
| **UNITED STATES FISH AND WILLIFE SERVICE,** *et al.*, ) | |
| ) | |
| **Defendants.** ) | |

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure because there is no genuine issue as to any material fact, and Plaintiff is entitled to a judgment as a matter of law.

For the reasons set forth in the accompanying Memorandum of Points and Authorities, Plaintiff is entitled to a judgment as a matter of law that Defendants are in violation of Section 4 of the Endangered Species Act because the United States Fish and Wildlife Service is failing to comply with the statutory deadline for designating critical habitat for the Southwest Alaska Distinct Population Segment of the Northern Sea Otter. Plaintiff respectfully requests declaratory and injunctive relief to correct this ongoing violation.

In support of this motion, Plaintiff submits the attached Memorandum of Points and Authorities, Statement of Material Facts for which there is no genuine issue, Declaration of Kieran Mulvaney, and a proposed order.

Dated: 23rd of February 2007.

Respectfully submitted,

/s/ William J. Snape

William J. Snape, III (DC Bar # 455266)
CENTER FOR BIOLOGICAL DIVERSITY
5268 Watson Street, NW
Washington, DC 20016
Telephone: (202) 537-3458, (202) 536-9351
Email: bsnape@biologicaldiversity.org
        billsnape@earthlink.net


/s/ Miyoko Sakashita

Miyoko Sakashita (*Pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 308
Fax: (415) 436-9683
Email: miyoko@biologicaldiversity.org


Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** | ) ) ) ) | |
| Plaintiff, | ) | **Case No: 1:06CV02151 (RMC)** |
| v. | ) ) | |
| **UNITED STATES FISH AND WILDLIFE SERVICE,** *et al.*, | ) ) ) | |
| Defendants. | ) ) ) | |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF PLAINTIFF'S
## MOTION FOR SUMMARY JUDGMENT

# I. TABLE OF CONTENTS

I. Table of Contents.............................................................................................................. 2

II. Table of Authorities ........................................................................................................ 3

III. Introduction.................................................................................................................... 5

IV. Background.................................................................................................................... 6

    1.  Endangered Species Act ........................................................................................... 6

    2.  Brief Summary of the Material Facts ...................................................................... 9

V. Argument ........................................................................................................................ 9

    1.  Standard of Review................................................................................................... 9

    2.  FWS Is in Violation of Its Mandatory Duty to Designate Critical Habitat for the
        Alaska Sea Otter. ................................................................................................... 10

        a.  The ESA imposes a nondiscretionary duty on FWS to designate critical habitat
            for the Alaska Sea Otter. ................................................................................... 10

        b.  FWS failed to carry out its duty to designate critical habitat for the Alaska Sea
            Otter by the deadline imposed by the ESA. ...................................................... 13

    3.  Plaintiff Is Entitled to an Injunction Ordering FWS to Designate Critical Habitat 16

VI. Conclusion ................................................................................................................... 18

## II. TABLE OF AUTHORITIES

**Cases**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................................... 10

*Bennett v. Spear*, 520 U.S. 154 (1997) ............................................................................. 11

*Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166 (9th Cir. 2002)................ 12, 17, 18

*Butte Envtl. Council v. White*, 145 F. Supp. 2d 1180 (E.D. Cal. 2001)...................... 13, 18

*Colo. Wildlife Fed. v. Turner*, 1992 U.S. Dist. LEXIS 22046 (D. Colo. 1992).......... 11, 15

*Conservation Council for Haw. v. Babbitt*, 2 F. Supp. 2d 1280 (D. Haw. 1998)............. 16

*Conservation Council for Haw. v. Babbitt*, 24 F. Supp. 2d 1074 (D. Haw. 1998)........... 18

*Ctr. for Biological Diversity v. Norton*, 254 F.3d 833 (9th Cir. 2001) ............................ 12

*\*Defenders of Wildlife v. Norton*, 239 F. Supp. 2d 9 (D.D.C. 2002)................... 13, 15, 16

*\*Forest Guardians v. Babbitt*, 174 F.3d 1178 (10th Cir. 1998) ............................... passim

*Gerber v. Norton*, 294 F.3d 173 (D.C. Cir. 2002). .......................................................... 10

*\*N. Spotted Owl v. Lujan*, 758 F. Supp. 621 (W.D. Wash. 1991) ..................... 7, 8, 12, 14

*Natural Res. Defense Council v. United States Dep't of Interior,* 113 F.3d 1121 (9th Cir. 1997) .............................................................................................................................. 7

*Nebraska v. Wyoming*, 507 U.S. 584 (1993)...................................................................... 9

*Or. Natural Res. Council v. Kantor*, 99 F.3d 334 (9th Cir. 1996) ................................... 12

*S. Appalachian Biodiversity Project v. United States Fish & Wildlife Serv.*, 181 F. Supp. 2d 883 (E.D. Tenn. 2001) ......................................................................................... 11

*Southwest Ctr. for Biological Diversity v. Clark*, 90 F. Supp. 2d 1300 (D.N.M. 1999) ...................................................................................................................... 13, 18

*Tenn. Valley Auth. v. Hill*, 437 U.S. 153 (1978) .............................................................. 17

*Weinberger v. Romero-Barcelo*, 456 U.S. 305 (1982) ..................................................... 17

## Statutes

5 U.S.C. § 706.......................................................................................... 10, 16, 17

16 U.S.C. § 1531(b) .................................................................................. 6

16 U.S.C. § 1532 ....................................................................................... 6, 7

16 U.S.C. § 1533 ....................................................................................... 6

16 U.S.C. § 1533(a)(3)............................................................................. 5, 7, 10, 11

16 U.S.C. § 1533(b)(6)(C) ....................................................................... passim

16 U.S.C. § 1536(a)(2).............................................................................. 8, 15, 16

16 U.S.C. § 1540(g) .................................................................................. 9, 10

## Other Authorities

70 Fed. Reg. 46366 (Aug. 9, 2005)......................................................... 5

H.R. Rep. No. 94-887 (1976).................................................................. 15

## Rules

Fed. R. Civ. P. 56(c) ................................................................................ 9

## Regulations

50 C.F.R. § 424.12 .................................................................................... 17

50 C.F.R. § 424.12(a)................................................................................ 7

50 C.F.R. § 424.16(b) ............................................................................... 17

# III. INTRODUCTION

This suit aims to compel the Secretary of the Interior, Dirk Kempthorne, and United States Fish and Wildlife Service (collectively "FWS") to designate critical habitat for the threatened Southwest Alaska Distinct Population Segment of the Northern Sea Otter ("Alaska Sea Otter"). Section 4 of the Endangered Species Act ("ESA") imposes a strict deadline by which FWS must designate critical habitat for threatened and endangered species. Although the statutory deadline has passed, FWS has failed to designate critical habitat for the Alaska Sea Otter.

Once abundant in the region, it is now rare to see otters swimming belly-up, eating, and playing near shore in the Aleutian Islands of Alaska.  In the last few decades, the Alaska Sea Otter population has plummeted with a decline of more than 90% in some areas. Critical habitat provides important habitat protection for the vanishing Alaska Sea Otter and recent studies have demonstrated that critical habitat improves a species' chance of recovery.

The ESA imposes a nondiscretionary duty on FWS to designate critical habitat when it lists a species as threatened or endangered, and although the Alaska Sea Otter was listed as threatened more than a year ago it remains without critical habitat. On August 9, 2005, FWS promulgated a final rule listing the Alaska Sea Otter as a threatened species under the ESA. 70 Fed. Reg. 46366 (Aug. 9, 2005). The ESA requires that FWS designate critical habitat <u>concurrently</u> with listing the species to the maximum extent prudent and determinable. 16 U.S.C. § 1533(a)(3)(A). In the listing rule, however, FWS stated that critical habitat was "not determinable" at that time. 70 Fed. Reg. at 46384. Upon this finding, the ESA requires the agency to publish a final determination of

critical habitat <u>no later than one year</u> from the date of the "not determinable" finding. 16 U.S.C. § 1533(b)(6)(C). More than a year has passed, and FWS continues to withhold critical habitat protections for the Alaska Sea Otter.

In the interest of securing critical habitat for the Alaska Sea Otter, Plaintiff moves for summary judgment to compel proposed and final critical habitat determinations for the Alaska Sea Otter.  Because there is no genuine issue of material fact in this case, Plaintiff Center for Biological Diversity is entitled to summary judgment that FWS is violating the ESA. Plaintiff respectfully requests this Court to issue declaratory relief and an injunction ordering FWS to promptly issue the overdue critical habitat determination.[1]

## IV. BACKGROUND

### 1. Endangered Species Act

Congress enacted the ESA to ensure the protection and conservation of threatened and endangered species and the ecosystems upon which they depend. 16 U.S.C. § 1531(b). To achieve this purpose, Section 4 of the ESA requires that FWS protect imperiled species by listing them as "endangered" or "threatened." *Id.* § 1533.  A species is endangered if it is "in danger of extinction throughout all or a significant portion of its range." *Id.* § 1532(6). A species is considered threatened if it is "likely to become an endangered species within the foreseeable future." *Id.* § 1532(20).

---

[1] Plaintiff Center for Biological Diversity has standing to bring this action. As an example of its standing, Plaintiff submits the Declaration of Kieran Mulvaney. (Attached as Ex. A.)

When FWS lists a species as threatened or endangered, the ESA mandates that FWS shall designate critical habitat for that species. *Id.* § 1533(a)(3)(A). Critical habitat means:

> (i) the specific areas within the geographical area occupied by the species, at the time it is listed…, on which are found those physical or biological features (I) essential to the conservation of the species and (II) which may require special management considerations or protection; and (ii) specific areas outside the geographical area occupied by the species at the time it is listed…, upon a determination by the Secretary that such areas are essential for the conservation of the species.

*Id.* § 1532(5)(A).

The ESA requires that a critical habitat designation "*shall* be published *concurrently*" with a listing determination. 16 U.S.C. §§ 1533(a)(3)(A), (b)(6)(C) (emphasis added). The ESA provides a narrow exception to this deadline when FWS makes a "not prudent" or "not determinable" finding. *Id.* § 1533(a)(3)(A). Only in rare circumstances is critical habitat "not prudent," meaning that its designation would increase the threats to the species, for example, increasing the risk of collection. 50 C.F.R. § 424.12(a)(1); *see, e.g., Natural Res. Defense Council v. United States Dep't of Interior,* 113 F.3d 1121, 1126 (9th Cir. 1997) (finding "not prudent" exception narrowly allowed).

Critical habitat is "not determinable" if:

> (i) Information sufficient to perform required analyses of the impacts of the designation is lacking, or (ii) The biological needs of the species are not sufficiently well known to permit identification of an area as critical habitat.

50 C.F.R. § 424.12(a)(2); *see N. Spotted Owl v. Lujan*, 758 F. Supp. 621, 626 (W.D. Wash. 1991) (finding "not determinable" exception to concurrent designation of critical habitat is only available in extraordinary circumstances).

In those situations where critical habitat is "not determinable" at the time of listing FWS may extend the deadline to conduct additional research, but FWS must designate critical habitat <u>no later than one year</u> from the date of the "not determinable" finding. 16 U.S.C. § 1533(b)(6)(C)(ii).[2] "[N]ot later than the close of such additional year," FWS "must publish a final regulation, based on such data as may be available at that time, designating, to the maximum extent prudent, such habitat." *Id.*

Critical habitat designation is a central component of the legal system developed by Congress to prevent the extinction of species. Critical habitat affords important protection for imperiled species beyond that provided by listing alone. For example, under ESA Section 7, each Federal agency must ensure that any action it authorizes, funds, or carries out will not "jeopardize the continued existence of any endangered species or threatened species *or result in the destruction or adverse modification*" of critical habitat. *Id.* § 1536(a)(2) (emphasis added). Additionally, designation of critical habitat contributes to the protection of endangered and threatened species by informing the public, and state and local governments which areas are essential to the conservation of listed species.

To ensure compliance with these mandatory duties and deadlines the ESA's citizen suit provision authorizes "any person" to commence an action to enforce the ESA.

---

[2] Courts have characterized the deadline following a "not determinable" decision as either two years from the proposed listing or one year from the final listing decision. *Compare Forest Guardians v. Babbitt,* 174 F.3d 1178, 1186 (10th Cir. 1998), *with N. Spotted Owl,* 758 F. Supp. at 625-26. Here, FWS failed to meet the statutory deadline under either characterization.

16 U.S.C. § 1540(g). This provision specifically provides courts with jurisdiction over actions "to enjoin any person, including the United States and any other governmental instrumentality or agency" alleged to be in violation of the ESA or its implementing regulations. *Id.* § 1540(g)(1)(A). It further provides jurisdiction for any action against the Secretary for his failure to perform any nondiscretionary duty under ESA's Section 4. *Id.* § 1540(g)(1)(C). Thus, all mandatory duties and deadlines under Section 4 of the ESA are enforceable through the ESA's citizen suit provision.

### 2. Brief Summary of the Material Facts

The Alaska Sea Otter was once the most abundant population of sea otters, but now, the Alaska Sea Otter has nearly vanished from its range. (*See* Statement of Material Facts ¶ 4 [hereinafter "Facts"].) As a result, FWS listed the Alaska Sea Otter as a threatened species on August 9, 2005. (Facts ¶ 19.) At the time of listing, FWS made a finding that critical habitat for the Alaska Sea Otter was "not determinable." (Facts ¶ 21.) This finding permitted a one-year extension of FWS' duty to designate critical habitat concurrently with listing the species. (Facts ¶¶ 22-23.) Thus, the final publication of a critical habitat rule was due no later than August 9, 2006. (Facts ¶ 25.) Although the deadline has passed, FWS has not designated critical habitat for the imperiled Alaska Sea Otter. (Facts ¶27.)

## V. ARGUMENT

### 1. Standard of Review

A court shall render summary judgment when no genuine issue as to any material fact exists and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a

jury or whether it is so one-sided that one party must prevail as a matter of law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

This case is brought pursuant to the ESA's citizen suit provision. 16 U.S.C. § 1540(g). Since the ESA lacks an internal standard of review, this Court's review is governed by the Administrative Procedure Act ("APA"). *Gerber v. Norton*, 294 F.3d 173, 178 (D.C. Cir. 2002). Under the APA, this Court "shall compel agency action unlawfully withheld or unreasonably delayed," and "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law." 5 U.S.C. § 706.

### 2. FWS Is in Violation of Its Mandatory Duty to Designate Critical Habitat for the Alaska Sea Otter.

Plaintiffs are entitled to summary judgment because FWS is in violation of Section 4 of the ESA for its failure to designate critical habitat within the strict time limit mandated by the ESA. The ESA requires that FWS designate critical habitat concurrently with listing a species as threatened or endangered, except FWS may postpone the deadline for no more than one-year if the critical habitat is "not determinable" at the time of listing. 16 U.S.C. § 1533(b)(6)(C). Therefore, FWS had a nondiscretionary duty to designate critical habitat for the Alaska Sea Otter no later than August 9, 2006, and FWS is unlawfully withholding that action.

### a. The ESA imposes a nondiscretionary duty on FWS to designate critical habitat for the Alaska Sea Otter.

FWS' duty to designate critical habitat is nondiscretionary. Congress mandated that FWS "*shall*, concurrently with making a determination [to list a species]…, designate any habitat of such species which is then considered to be critical habitat." *Id.* § 1533(a)(3) (emphasis added). The use of the word "shall" in a statute indicates

Congress' intent to impose a mandatory duty. *Forest Guardians v. Babbitt*, 174 F.3d 1178 , 1187 (10th Cir. 1998) (applying canon of statutory construction that "'shall' means shall"); *Bennett v. Spear*, 520 U.S. 154, 172 (1997) (use of "shall" creates a "categorical requirement"). Thus, ESA Section 4(a)(3) imposes a nondiscretionary duty on FWS to designate critical habitat at the time a species is listed.

Here, FWS invoked an exception to the duty to designate critical habitat *concurrently* with listing a species, which extended the deadline by no more than one year. (Facts ¶¶ 21-23.) There are two narrow exceptions to the ESA's requirement that FWS publish the listing and critical habitat determination at the same time. There is an exception, first, if the designation would not be "prudent," and, second, if critical habitat is "not determinable" at the time of listing. 16 U.S.C. § 1533(a)(3). Here, FWS found that critical habitat was "prudent," but "not determinable" for the Alaska Sea Otter. (Facts ¶¶ 20-21.) The ESA provides that if FWS finds critical habitat "not determinable" at the time of listing, then it may extend the deadline "by not more than one additional year" from the final listing decision. 16 U.S.C. § 1533(b)(6)(C). Therefore, FWS had a mandatory duty to publish a final rule designating critical habitat for the Alaska Sea Otter "no later than the close of such additional year." *Id.*; *see, e.g., S. Appalachian Biodiversity Project v. United States Fish & Wildlife Serv.*, 181 F. Supp. 2d 883, 886 (E.D. Tenn. 2001) (holding FWS violated statutory duty to designate critical habitat within one year of "not determinable" finding); *Colo. Wildlife Fed. v. Turner*, 1992 U.S. Dist. LEXIS 22046, 13 (D. Colo. 1992) (concluding FWS had a clear mandate to designate critical habitat within one year of "not determinable" finding).

The ESA's deadlines are clear and strictly enforced because timeliness in listing species and protecting their habitat is important to prevent the permanent loss of species. *See Forest Guardians,* 174 F.3d at 1186 (finding "statutorily-imposed mandatory deadline to designate critical habitat"); *Or. Natural Res. Council v. Kantor*, 99 F.3d 334, 338-39 (9th Cir. 1996)(stating, "[t]he language of the ESA regarding deadlines for action could hardly be more clear"); *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002) (stating that Congress imposed a firm deadline for ESA listing determinations); *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, 839-40 (9th Cir. 2001) ("Congress from the outset recognized that timeliness in the listing process is essential"). In *Northern Spotted Owl v. Lujan*, 758 F. Supp. at 626, the court granted a motion to compel FWS to designate critical habitat for the northern spotted owl and found that "designation of critical habitat is to coincide with the final listing decision absent extraordinary circumstances." Accordingly, critical habitat deadlines are firm, and "[i]n no event may the Secretary delay the designation of critical habitat for more than twelve months after publication of the final listing rule." *Id.* at 625-26. Moreover, the legislative history of the ESA emphasized that FWS should make "the strongest attempt possible" to designate critical habitat concurrently with listing, and that critical habitat designation should happen at the earliest possible time, not to exceed the one-year extension. *Id.* at 626 (citing H.R. Rep. No. 97-567 at 19-20 (1982) and H.R. Conf. Rep. No. 97-835 at 24 (1982)).

In this case, FWS had a nondiscretionary duty to designate critical habitat at the time of listing the Alaska Sea Otter, but instead it extended the deadline one-year by invoking an exception that Congress only intended for use in rare circumstances.

Therefore, FWS' finding that critical habitat was "not determinable" at the time of listing triggered an obligation that FWS publish a final critical habitat designation within one year of the final determination that listed the Alaska Sea Otter as threatened.

### b. FWS failed to carry out its duty to designate critical habitat for the Alaska Sea Otter by the deadline imposed by the ESA.

FWS' failure to designate critical habitat within the statutory time limit is unlawful. *Forest Guardians,* 174 F.3d at 1186; *Defenders of Wildlife v. Norton*, 239 F. Supp. 2d 9, 21-22 (D.D.C. 2002) (finding violation of ESA for overdue lynx critical habitat); *Butte Envtl. Council v. White*, 145 F. Supp. 2d 1180, 1182 (E.D. Cal. 2001) (holding unlawful FWS' failure to designate critical habitat for fairy shrimp); *Southwest Ctr. for Biological Diversity v. Clark*, 90 F. Supp. 2d 1300, 1313 (D.N.M. 1999) (concluding FWS violated ESA by failing to designate critical habitat for spikedace and loach minnow). In *Forest Guardians*, 174 F.3d at 1186, FWS proposed to list the silvery minnow as endangered and found that the species' habitat was "not determinable." The Tenth Circuit held that the obligation to designate critical habitat for a listed species is a "mandatory non-discretionary duty unambiguously imposed by the ESA." *Id.* at 1184. The court concluded that FWS violated its duty to issue a final rule designating critical habitat because the deadline had passed and FWS had yet to fulfill that duty. *Id.*

Here, as in *Forest Guardians*, FWS' failure to designate critical habitat within the one-year time limit is a violation of FWS' nondiscretionary duty. With regard to the Alaska Sea Otter, FWS has repeatedly flouted the clear duties and deadlines imposed by the ESA. It has been six years since Plaintiff petitioned FWS to list the Alaska Sea Otter under the ESA. (Facts ¶ 14.) Despite the ongoing decline of Alaska Sea Otters, FWS permitted the Alaska Sea Otter to languish without ESA protections for years. (Facts ¶

15.)  Several years and three lawsuits later, FWS finally listed the Alaska Sea Otter as threatened, but FWS did not concurrently designate critical habitat. (Facts ¶¶ 18-21.) Instead, FWS found that the Alaska Sea Otter's critical habitat was "not determinable," and extended the deadline to designate habitat for one year. (Facts ¶ 21-23.) FWS continues to withhold important habitat protections for the otter. (Facts ¶ 27.)

It has been over three years since FWS proposed a rule to list the Alaska Sea Otter on February 11, 2004, and more than one year has passed since the final listing determination on August 9, 2005. (Facts ¶¶ 16, 25.) Accordingly, a critical habitat final rule was due no later than August 9, 2006, including the maximum one-year extension of the deadline. To date, FWS has not designated critical habitat for the Alaska Sea Otter, nor taken any action to do so. (Facts ¶ 27.) Thus, FWS is failing to carry out its nondiscretionary duty to designate critical habitat for the Alaska Sea Otter in accordance with the deadline imposed by the ESA.

FWS' failure to designate critical habitat deprives the Alaska Sea Otter of the full protections that Congress intended for imperiled species under the ESA. First, denying critical habitat for the Alaska Sea Otter frustrates Congress' intent to provide habitat protections for listed species to promote their recovery. Critical habitat designation is a "central component of the legal scheme developed by Congress to prevent the permanent loss of species." *N. Spotted Owl*, 758 F. Supp. at 629.  The legislative history of the ESA shows Congress recognized the importance of habitat protection in conserving and recovering species:

> classifying a species as endangered or threatened is only the first step in
> insuring its survival. Of equal or more importance is the determination of
> the habitat necessary for that species' continued existence…If the
> protection of endangered and threatened species depends in large measure

> on the preservation of the species' habitat, then *the ultimate effectiveness of the Endangered Species Act will depend on the designation of critical habitat*.

H.R. Rep. No. 94-887 at 3 (1976) (emphasis added). FWS concurs that habitat protection may be an important factor in the recovery of the Alaska Sea Otter. (Facts ¶ 24.) As a result of FWS' inaction, the lack of critical habitat could be impeding the Alaska Sea Otter's chance of recovery.

Second, FWS' failure to comply with its mandatory duty to designate critical habitat undermines the purpose and function of Section 7 consultations to prevent the destruction or adverse modification of critical habitat. *Defenders of Wildlife*, 239 F. Supp. 2d at 25; *see also* 16 U.S.C. § 1536(a)(2); *Colo. Wildlife Fed.*, 1992 U.S. Dist. LEXIS at 10-11 (stating, "without designation of the critical habitat, many projects may improperly continue and destroy habitat which is invaluable to preventing …extinction"). In *Defenders of Wildlife*, this Court held that FWS had an obligation to timely designate critical habitat because without critical habitat imperiled species may be denied the consultation process and Biological Opinions required by the ESA. *Defenders of Wildlife*, 239 F. Supp. 2d at 25. "Such excessive delay runs completely counter to the mandate of the ESA," to conserve listed species and the ecosystems upon which they depend. *Id.* at 22.

With regard to the Alaska Sea Otter, there are activities and actions planned near its range that may adversely affect the otter's habitat. The Alaska Sea Otter range buffers the Bering Sea with otters found in the near shore areas along the Aleutian Islands and the Alaska Peninsula and extending toward the Gulf of Alaska to Cook Inlet. (Facts ¶ 7.) Absent critical habitat protection, some of these areas may risk adverse impacts that

could affect the Alaska Sea Otter.  As in *Defenders of Wildlife*, the Section 7 duty for Federal agencies to consult on actions that affect critical habitat is being undermined by FWS' failure to designate critical habitat for the Alaska Sea Otter. If the Alaska Sea Otter had critical habitat, Federal agencies would be required to consult with wildlife agencies to ensure that their actions do not destroy or adversely modify critical habitat thus improving the likelihood of survival and recovery of the Alaska Sea Otter. *See* 16 U.S.C. § 1536(a)(2).

Additionally, "the designation of the critical habitat provides greater information to the public and state and local government by informing not only that the species is endangered or threatened but also what area is essential to the conservation of the species." *Conservation Council for Haw. v. Babbitt*, 2 F. Supp. 2d 1280, 1286 (D. Haw. 1998) (discussing benefits of critical habitat designation for listed plants in Hawaii).

In summary, this is a simple case where FWS failed to perform a nondiscretionary duty.  FWS had a duty to designate critical habitat for the Alaska Sea Otter no later than August 9, 2006. That deadline has come and gone, and to date, FWS has not issued a critical habitat designation for the Alaska Sea Otter. FWS' failure to carry out its duty is depriving the Alaska Sea Otter of the ESA benefits Congress intended for imperiled species. Therefore, FWS is not acting in accordance with law and is unlawfully withholding action required by the ESA, and must be compelled to designate critical habitat for the Alaska Sea Otter. 5 U.S.C. § 706.

### 3. Plaintiff Is Entitled to an Injunction Ordering FWS to Designate Critical Habitat

Plaintiff requests that this Court declare that FWS has failed, and continues to fail, to perform its nondiscretionary duty under the ESA to designate critical habitat for the

Alaska Sea Otter.  Additionally, Plaintiff requests that this Court order an injunction compelling FWS to take final action designating critical habitat for the Alaska Sea Otter by a date certain.

For the ESA, Congress has mandated a special standard of injunctive relief which has "foreclosed the exercise of the usual discretion possessed by a court of equity," *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 313 (1982), and which affords endangered species "the highest of priorities." *Tenn. Valley Auth. v. Hill*, 437 U.S. 153, 174 (1978); *see also*, *Biodiversity Legal Found.*, 309 F.3d at 1177-78 (finding an injunction must be issued when FWS fails to comply with Section 4 of the ESA).  Under the ESA, the balance of hardships has already been struck in favor of endangered species. *Tenn. Valley Auth.*, 437 U.S. at 194.

The APA similarly compels injunctive relief for violations of the ESA, stating that, "the reviewing court *shall*… compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706 (1)(emphasis added); *see Forest Guardians*, 174 F.3d at 1192.

Plaintiff requests that this Court order FWS to issue a proposed critical habitat designation within 60 days of this Court's decision and a final critical habitat designation no later than 180 days from the decision. This timeframe is reasonable in light of the amount of work necessary to complete the designation and to allow for a sixty-day public comment period. 50 C.F.R. §§424.12; 424.16(b). Plaintiff's request for designation

within six months is reasonable.[3] *See, e.g.*, *Butte Envtl. Council*, 145 F. Supp. 2d at 1184-84 (ordering critical habitat designation within six months); *Southwest Ctr. for Biological Diversity*, 90 F. Supp. 2d at 1313 (requiring designation of critical habitat for two species within five months); *Conservation Council for Haw. v. Babbitt*, 24 F. Supp. 2d 1074, 1079 (D. Haw. 1998) (ordering proposed critical habitat designations for 100 species within 27 months). FWS has an overdue duty and should be compelled to designate critical habitat for the Alaska Sea Otter based on the data available at this time. 16 U.S.C. § 1533(b)(6)(C).

## VI. CONCLUSION

The Alaska Sea Otter is in trouble and its chances of recovery depend, in part, on habitat protections. The Alaska Sea Otter needs the long overdue full protections of the ESA. This case is clear, FWS is in violation of its mandatory duty to designate critical habitat within the timeframe required by the ESA. Plaintiff respectfully requests this Court to grant its Motion for Summary Judgment and issue appropriate declaratory and injunctive relief.

/

/

/

---

[3] An order compelling FWS to act by a date certain is appropriate, irrespective of agency resource limitations. *Biodiversity Legal Found.*, 309 F. 3d 1177-78 (finding court had no discretion to consider the agency's stated priorities); *Forest Guardians*, 174 F.3d at 1192 (rejecting inadequate resource argument with respect to the remedy).

Dated: 23rd of February 2007.

Respectfully submitted,

/s/ William Snape
William J. Snape, III (DC Bar # 455266)
CENTER FOR BIOLOGICAL DIVERSITY
5268 Watson Street, NW
Washington, DC 20016
Telephone: (202) 537-3458, (202) 536-9351
Email: bsnape@biologicaldiversity.org
        billsnape@earthlink.net


/s/ Miyoko Sakashita
Miyoko Sakashita (*Pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 308
Fax: (415) 436-9683
Email: miyoko@biologicaldiversity.org


Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

| | |
|---|---|
| **CENTER FOR BIOLOGICAL DIVERSITY,** | ) ) ) |
| **Plaintiff,** | ) **Case No: 1:06CV02151 (RMC)** |
| **v.** | ) ) |
| **UNITED STATES FISH AND WILDLIFE SERVICE, *et al.*,** | ) ) ) |
| **Defendants.** | ) ) |
| _____ | ) |

## STATEMENT OF MATERIAL FACTS IN SUPPORT OF
## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Pursuant to LCvR 7(h), Plaintiff Center for Biological Diversity respectfully submits this Statement of Material Facts as to which there is no genuine issue in support of its Motion for Summary Judgment:

**Summary**

1.   On August 9, 2005, the United States Fish and Wildlife Service ("FWS") granted threatened status for the Southwest Alaska Distinct Population Segment of the Northern Sea Otter (*Enhydra lutris kenyoni*) ("Alaska Sea Otter") under the Endangered Species Act ("ESA"). 70 Fed. Reg. 46366 (Aug. 9, 2005).

2.   At the time of listing, FWS found that critical habitat was "not determinable" for the Alaska Sea Otter. *Id.* at 46384. Under the ESA, this finding permitted FWS no longer than one year from the date of the "not determinable" finding to publish a final rule designating critical habitat for the Alaska Sea Otter. 16 U.S.C. § 1533(b)(6)(C)(ii).

3.   FWS has not yet designated critical habitat for the Alaska Sea Otter and the deadline has passed.

**Background on the Alaska Sea Otter**

4.   Once one of the largest populations of sea otters, the Alaska Sea Otter population has dramatically declined since the 1970s, with some areas declining by over 90%. 70 Fed. Reg. at 46366.

5.   Otters are the smallest marine mammals, and they often swim belly-up on the ocean surface. Sea otters live in shallow waters near shore and eat a variety of prey from the sea floor including urchins, clams, mussels, crabs, octopus, and sometimes fish. *Id.*

6.   Sea otters are a keystone species, meaning that they strongly influence the marine ecosystem around them. *Id.* For example, by preying on urchins otters prevent the urchins from grazing kelp thus allowing the kelp forest to flourish. *Id.*

7.   The Alaska Sea Otter population lives in southwest Alaska and it ranges from Attu Island at the western end of Near Islands in the Aleutians, east to Kamishak Bay on the western side of lower Cook Inlet, and includes waters adjacent to the Aleutian Islands, the Alaska Peninsula, the Kodiak archipelago, and the Barren Islands. *Id.* at 46368 (citing Figure 3 of the Proposed Rule, 69 Fed. Reg. 6600, 6605 (Feb. 11, 2004)).

8.   Recent surveys indicate that the Alaska Sea Otter population has declined by at least 55-67% since the mid-1980s. 70 Fed. Reg. at 46384. More sea otters are lost each year with ongoing yearly declines. In the eastern Aleutian Islands sea otters are declining at a rate of 15% per year; the rate is 12.5% for islands along the south side of the Alaska Peninsula, and 29% in western and central Aleutian Islands. *Id.*

9.   The precise cause of the decline of Alaska Sea Otters is uncertain.

10. Habitat protection may be important for the recovery of the Alaska Sea Otter. *Id.* at 46377.

11. Habitat modifications can affect otters. For example, commercial fisheries may reduce prey for otters, and development of harbors and channels may affect habitat. *Id.* at 46380-81.

12. Oil spills can also adversely modify sea otter habitat, and sea otters are particularly vulnerable to contamination by oil. *Id.* at 46381, 46383. Sea otters rely on their fur as insulation and oiled sea otters are at risk of hypothermia and ingestion of toxic chemicals. *Id.* at 46383. Since 1990, there have been more than 4,000 oil spills reported in Alaska, and nearly 1,100 of those occurred in the range of the Alaska Sea Otter. *Id.*

13. Predation by killer whales or disease may also contribute to the decline of the otters. *Id.* at 46382. Because killer whales prefer to prey on larger marine mammals, this suggests that there may be significant changes affecting the Bering Sea ecosystem, such as the decline of Steller sea lions and harbor seals. *Id.*

**History of the ESA Listing Process for the Alaska Sea Otter**

14. In response to the alarming declines of the Alaska Sea Otter, on October 26, 2000, the Center for Biological Diversity filed a petition to list the population under the ESA. 70 Fed. Reg. at 46372.

15. For several years, the Alaska Sea Otter remained a candidate species with no substantive protection under the ESA. On December 4, 2003, the Center filed a lawsuit to compel FWS to make a finding on the petition to list the Alaska Sea Otter. *Id.*

16. On February 11, 2004, after the Center filed its complaint, FWS published the proposed rule to list the Alaska Sea Otter as threatened. *Id.*; *see also*, 69 Fed. Reg. 6600 (Feb. 11, 2004).

17. When FWS failed to publish a final rule listing the Alaska Sea Otter within the one-year time limit mandated by the ESA, on June 1, 2005, the Center filed another lawsuit to compel FWS to give the Alaska Sea Otter ESA protection. *Center for Biological Diversity v. Manson*, No. 1:05CV01087 (D.D.C. Jun. 1, 2005).

18. Nearly five years after the Center filed its listing petition, FWS published a final rule in the Federal Register listing the Alaska Sea Otter as threatened. 70 Fed. Reg. at 46366.

**FWS is failing to comply with the ESA's deadline to designate critical habitat for the Alaska Sea Otter.**

19. On August 9, 2005, FWS granted threatened status for the Alaska Sea Otter. 70 Fed. Reg. 46366. This means that the Alaska Sea Otter is likely to become endangered within the foreseeable future throughout all or a significant portion of its range. *Id.* at 46380.

20. In its final listing rule, FWS found that designation of critical habitat for the Alaska Sea Otter was "prudent." *Id.* at 46384.

21. However, FWS did not designate critical habitat for the Alaska Sea Otter because it found that critical habitat was "not determinable" at that time. *Id.*

> We find that designation of critical habitat for the southwest Alaska DPS of the northern sea otter is not determinable at this time because we are unable to identify the physical and biological features essential to the conservation of this DPS.

*Id.*

22. Under the ESA, when critical habitat is not determinable at the time of listing, the agency may conduct further research, but no more than one year later FWS "must" publish a final critical habitat designation "based on such data as may be available at that time." 16 U.S.C. § 1533(b)(6)(C)(ii).

23. In the final listing rule, FWS acknowledged this deadline:

When a 'not determinable' finding is made, we must, within one year of the publication date of the final listing rule, propose critical habitat, unless the designation is found to be not prudent.

70 Fed. Reg. at 46384.

24. During the comment period on the proposed rule, FWS received thousands of comments supporting the listing of the Alaska Sea Otter, and several commenters stated the importance of habitat protection for the survival of the Alaska Sea Otters. *Id.* at 46373, 46377. FWS responded:

[W]e agree that habitat protection may be an important factor in the recovery of the population. However, the extent of critical habitat is not yet determinable…Once we are able to determine the geographic extent of critical habitat, it will be designated through a separate rulemaking process that will include an opportunity for public review and comment.

*Id.* at 46377.

25. Because FWS published its final rule listing the Alaska Sea Otter in the Federal Register on August 9, 2005, a final critical habitat designation was due within twelve months—to be published no later than August 9, 2006.

26. On October 3, 2006, the Center sent by facsimile and certified mail to FWS a sixty-day notice letter of intent to sue over violations of Section 4 of the Endangered Species Act for its failure to designate critical habitat for the Alaska Sea Otter.

27. To date, FWS has not published a final rule designating critical habitat for the Alaska Sea Otter.

Dated:  23rd of February 2007.

Respectfully submitted,

/s/ William Snape
William J. Snape, III (DC Bar # 455266)
CENTER FOR BIOLOGICAL DIVERSITY
5268 Watson Street, NW
Washington, DC 20016
Telephone: (202) 537-3458, (202) 536-9351
Email: bsnape@biologicaldiversity.org
        billsnape@earthlink.net


/s/ Miyoko Sakashita
Miyoko Sakashita (*Pro hac vice*)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 308
Fax: (415) 436-9683
Email: miyoko@biologicaldiversity.org


Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Civil No.: 1:06CV02151 (RMC) |
| UNITED STATES FISH AND WILDLIFE SERVICE, et al., | ) ) ) | |
| Defendants. | ) ) | |

**DECLARATION OF KIERAN MULVANEY IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I, Kieran Mulvaney, declare as follows:

1.    The facts stated herein are personally known to me and, if called as a witness, I would and could competently testify thereto.

2.    My name is Kieran Mulvaney and I resided in Anchorage, Alaska for seven years until I recently moved to Virginia last year.

3.    In 1985, I began my career as an environmental journalist focusing on ocean issues.

4.    I am a professional author and activist with a long history of work in the field of ocean research and conservation. I am working as a consultant to Greenpeace USA, particularly on their oceans work, which is presently focused on the Bering Sea.

5.    In the summer of 1998, I traveled in the North Pacific including areas where the southwest Alaska population of the northern sea otter ("Alaska Sea Otter") is known

to live. While there, I traveled on a ship sailing through the Aleutian region conducting research on environmental issues in the area. I have been to places that are likely to be designated as critical habitat for the Alaska Sea Otter.

6.    Based on these experiences, in 2001, I authored "At the Ends of the Earth: A History of the Polar Regions," which includes references to the hunting of sea otters.

7.    I intend to research and write a history of the Bering Sea ecosystem, which will require me to conduct research into the past, present, and future of humanity's relationship with sea otters and will require ongoing visits to the Aleutian Islands, the Alaska Peninsula, and the Kodiak Archipelago in Alaska to view and experience sea otters. I am also considering writing a book on the polar bear and its habitat.

8.    I will return to Alaska in May 2007 for my work, research, and enjoyment. Additionally, I am planning to visit the Bering Sea region in June or July to conduct research on the area for the goal of furthering the protection and conservation of the Bering Sea ecosystem. I intend to seek out the sea otter and enjoy its habitat during future visits.

9.    I am a member of the Center for Biological Diversity ("the Center").  I support the Center's conservation and education work and rely on the organization to advocate on my behalf.  One of the primary purposes of the Center is to ensure the protection of imperiled species, including northern sea otters.  Because so much of my professional and recreational activities are dependent upon the protection and conservation of sea otters and their habitats, the Center's mission is directly tied to my own interests and well-being.

10.  I have personal, professional, aesthetic, recreational, and spiritual interests in the sea otter and its habitats, including southwest Alaska.  The Center and its members have participated in efforts to protect and preserve the continued survival of the Alaska Sea Otter, and in the process, the Center is protecting my own interests.  For example, the Center filed a petition to list the Alaska Sea Otter, which resulted in the protection of the Alaska Sea Otter as threatened species under the Endangered Species Act ("ESA").

11.  My interests are being harmed and face further harm due to the United States Fish and Wildlife Service's failure to designate critical habitat for the Alaska Sea Otter.  The Alaska Sea Otter is critically imperilled, and its decline is perpetuated by the failure to provide the critical habitat protections of the ESA.  My ability to observe the otters, complete my professional activities, and enjoy their habitat is impeded so long as the critical habitat designation is unlawfully delayed.

12.  Critical habitat designation will be an important step for Alaska Sea Otter's protection and recovery.  The absence of critical habitat allows degradation, modification, and destruction of habitat essential to the Alaska Sea Otter. The Fish and Wildlife Service has deprived the imperiled otter of significant legal protection. Activities are occurring in the Alaska Sea Otter's habitat that can adversely affect the otter, and are less likely to occur once critical habitat is designated. Critical habitat designation would afford the Alaska Sea Otter key protections of the ESA. For example, government actions that may adversely affect the otter's habitat must go through a consultation procedure to ensure the conservation of the otter.  Critical habitat designation will improve the chances of recovery for the Alaska Sea Otter.

13.   As someone who is deeply concerned about the fate of our imperiled marine wildlife, and the Alaska Sea Otter in particular, I am deeply troubled by the failure of the Fish and Wildlife Service to designate critical habitat for this species. Failing to finalize this process will increase the risk of further decline and extinction for this unique and fascinating animal.

14.   I have searched and continue to search for sea otters in southwest Alaska, including the Aleutian Islands and western Cook Inlet.  I have made these visits in the course of professional and personal field studies.  I have a profound appreciation for the Alaska Sea Otter.  I have made it a personal and professional mission to try to provide information leading to the protection and restoration of marine species.  I intend to continue activities that will lead to the recovery of the northern sea otter, especially the population in southwest Alaska, and I intend to visit areas where the species is currently found at least once a year for the foreseeable future.

15.   The designation of critical habitat for the Alaska Sea Otter under the ESA is an important step in assuring this species' conservation and recovery.  If the Alaska Sea Otter population is not granted critical habitat in the immediate future, its slide toward extinction is more likely to continue.  The decline of the Alaska Sea Otter injures my personal and professional interests.

16.   The continued decline and loss of the Alaska Sea Otter, which is more likely to occur absent critical habitat designation, is harming my interests.  My interest in the biological health of Alaska ecosystems is injured because the environment will be degraded by the loss of sea otter individuals, which are an integral part of the ecosystem. I suffer a loss of psychological and spiritual health from knowing that the

species is declining and its habitat is inadequately protected from adverse impacts. My
aesthetic and recreational interests are injured from the reduced chance to see the
Alaska Sea Otter in the wild and to enjoy its habitat. Additionally, I suffer a
professional loss, as I will not be able to continue my research and writing about the
species if the Alaska Sea Otter goes extinct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:

2/5/07

_____
Kieran Mulvaney

**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLUMBIA**

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY, )<br><br>Plaintiff, )<br>v. )<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, *et al.*, )<br><br>Defendants. )<br>_____ ) | Case No: 1:06CV02151 (RMC) |

**[PROPOSED] ORDER**

Having considered Plaintiff's Motion for Summary Judgment and any opposition thereto, it is hereby:

ORDERED that the plaintiff's motion for summary judgment is GRANTED; it is

FURTHER ORDERED that the Court DECLARES that Defendants, Dirk Kempthorne, Secretary of the Interior, and United States Fish and Wildlife Service (collectively "FWS"), violated the Endangered Species Act ("ESA") by failing to designate critical habitat for the Southwest Alaska Distinct Population Segment of the Northern Sea Otter ("Alaska Sea Otter"); it is

FURTHER ORDERED that the Court DECLARES that FWS acted arbitrarily and capriciously, not in accordance with law, without observance of procedure, and unlawfully withheld agency action in violation of the ESA, 16 U.S.C. §§ 1533(a)(3), (b)(6)(C), and the Administrative Procedure Act ("APA"), 5 U.S.C. § 706; it is

.

FURTHER ORDERED that FWS must publish in the Federal Register a proposed rule to designate critical habitat for the Alaska Sea Otter within 60 days; it is

FURTHER ORDERED that FWS shall publish in the Federal Register a final rule designating critical habitat for the Alaska Sea Otter in no later than 180 days; and it is

FURTHER ORDERED that the Court will retain jurisdiction for the purpose of ensuring compliance with this Order, and to resolve any motion by Plaintiff for attorneys' fees and costs.  If the parties are unable to resolve attorneys' fees among themselves, Plaintiff shall file any such motion within 60 days of this Order.

SO ORDERED.


DATED this _____ day of _____ 2007.


_____
Honorable Rosemary M. Collyer
United States District Court Judge

Attorneys to be notified:

Lawson E. Fite
U.S. Department of Justice
Environment & Natural Resources Division
Wildlife & Marine Resources Section
Ben Franklin Station
P.O. Box 7369
Washington, DC 20044-7369
Phone: (202) 305-0217
Fax: (202) 305-0275
Email: lawson.fite@usdoj.gov

Attorney for Defendants


William J. Snape, III (DC Bar # 455266)
CENTER FOR BIOLOGICAL DIVERSITY
5268 Watson Street, NW
Washington, DC 20016
Telephone: (202) 537-3458, (202) 536-9351
Email: bsnape@biologicaldiversity.org
         billsnape@earthlink.net

Miyoko Sakashita (Pro hac vice)
CENTER FOR BIOLOGICAL DIVERSITY
1095 Market St., Suite 511
San Francisco, CA 94103
Telephone: (415) 436-9682 x 308
Fax: (415) 436-9683
Email: miyoko@biologicaldiversity.org

Attorneys for Plaintiff